IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LONZELL GREEN,

    Plaintiff,

  vs.

ANDREW NANGALAMA, et al.

    Defendants.

                          /

No. 2:13-cv-2390-KJM-CMK-P

<u>FINDINGS AND RECOMMENDATION</u>

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's motion for summary judgment (Doc. 30) and defendant's motion to for summary judgment (Doc. 22). Plaintiff filed an opposition to defendant's motion (Doc. 37) and defendant filed an opposition to plaintiff's motion (Doc. 33). Defendant also filed a reply brief (Doc. 38).

**I. BACKGROUND**

        This action proceeds on plaintiff's original complaint (Doc. 1) against defendant Nangalama. Reading the complaint broadly as the court must, it was originally determined that plaintiff was alleging that the defendant had violated his Eighth Amendment rights by failing to treat nerve damage on his face and failing to provide pain medication. Two defendants, whom

1

the court determined were solely supervisory defendants, were dismissed from this action for failure to state a claim. This action proceeds only against defendant Nagalama.

## II. MOTIONS FOR SUMMARY JUDGMENT

There are two pending motions for summary judgment. Plaintiff moves for summary judgment on the basis that the defendant failed to uphold his part of the pain management agreement signed in January 2011. Defendant moves for summary judgment on the basis that plaintiff's claim is barred by the statute of limitations, defendant was not deliberately indifferent to plaintiff's medical needs, and defendant is entitled to qualified immunity.

### A. **Defendant's Evidence**

Defendant has submitted a statement of undisputed facts in support of the motion for summary judgment. The statement of undisputed facts is supported by defendant Nangalama's declaration, plaintiff's deposition, plaintiff's medical records, Pain Management Guidelines for Prison Health Care Services, and the 602 inmate appeal file from plaintiff's inmate grievance.

The relevant evidence defendant has submitted is summarized[1] as follows:

- Plaintiff's medical records indicate plaintiff suffered a knife wound in the late 1980s that left a large 5 inch scar on the left side of his face;
- The wound allegedly damaged a nerve that left part of his face with a subtle droop or paralysis, which some medical providers have also diagnosed as bells palsy;
- The alleged nerve damage also causes the left side of his face to twitch involuntarily throughout the day;
- Plaintiff's facial condition (twitching and partial paralysis) has been documented in Plaintiff's prison medical file since at least 2003;

---

[1] This summary is from defendant's separate statement of undisputed facts, and includes those supported by the evidence submitted.

2

- In 2006, plaintiff was referred to see an outside neurologist, Dr. Young, while he was housed at Kern Valley State Prison;
- Dr. Young ran electrode tests to rule out neurological problems such as seizures, but ultimately found no issues;
- Despite the partial facial paralysis and twitching, plaintiff has been able to sleep, work five days a week, exercise, and carry on his daily activities even without medication for years, and continues to do so presently. As recently as September 2016, his primary care doctor has noted that plaintiff is "asymptomatic" with very subtle bells palsy;
- Dr. Nangalama was one of plaintiff's primary care providers when he transferred to CSP-Sac;
- Plaintiff was prescribed methadone in November 2010 to treat complaints of degenerative and/or inflammation pain including scoliosis, lower back pain, and knee pain, after plaintiff complained that the NSAIDs he was taking upset his stomach;
- Plaintiff had previously requested stronger medication such as Demerol, methadone, or morphine for his scoliosis;
- Dr. Nangalama prescribed methadone at a dosage of 5 mg twice a day;
- Plaintiff took the methadone for approximately 100 days;
- CDCR's Pain Management Guidelines require inmate patients to sign and comply with an Opioid Use Agreement when they are given opioids such as methadone to treat pain;
- Plaintiff signed the Opioid Use Agreement on January 5, 2011;
- On January 19, 2011, plaintiff filed a 602 Health Care Appeal, in which he attached a request for physical therapy and "electrodiagnositc examination";

- Plaintiff testified at his deposition that he had submitted this 602 appeal against Dr. Nangalama because he understood that the January 5, 2011, Opioid Use Agreement required Dr. Nangalama to provide a specialist referral and physical therapy for plaintiff;
- Prior to plaintiff's 602 appeal being processed, plaintiff had a visit with Dr. Nangalama on January 27, 2011 for allergies;
- Dr. Nangalama noted plaintiff's facial paralysis, and referred him to a neurology specialist;
- The prison's Medical Authorization Review Committee (MARC) denied Dr. Nangalama's consult request, finding plaintiff's condition did not warrant a neurological consult because, based on its review of plaintiff's complete medical history, plaintiff had been having the same symptoms for nearly three decades without impact to his daily life activities;
- On February 4, 2011, Dr. Nangalama met with plaintiff to discuss his 602 health care appeal;
- On February 23, 2011, plaintiff again saw Dr. Nangalama, and requested an increase in his dosage of methadone to 10 mg twice a day.
- Plaintiff testified at his deposition that the twitching and pain in his face got worse even while he was taking methadone;
- Dr. Nangalama refused to increase the methadone, and decided to keep the dosage the same;
- Dr. Nangalama found no evidence that the methadone had any effect on plaintiff's scoliosis pain after three months, so decided to eventually wean plaintiff off;
- Based on Dr. Nangalama's observations and his review of plaintiff's medical history, plaintiff was able to carry out his daily activities without

| | | |
|---|---|---|
| 1 | | needing pain medication, including working as a laborer without |
| 2 | | restrictions; |
| 3 | • | Because there was no evidence that plaintiff's daily living activities were |
| 4 | | hindered while off methadone or that he needed the opioid in order to |
| 5 | | function and work, there was no medical reason to continue him on |
| 6 | | methadone. Dr. Nangalama noted no change in plaintiffs's daily life |
| 7 | | activities both before and during his taking methadone; |
| 8 | • | Plaintiff continued to take 5 mg of methadone twice a day for 30 days, |
| 9 | | until March 25, 2011; |
| 10 | • | Plaintiff was also being prescribed naproxen/naprosyn (Aleve) 500 mg; |
| 11 | • | Plaintiff was informed of the decision on his 602 health care appeal by |
| 12 | | letter on February 28, 2011; |
| 13 | • | In the letter, Dr. Nangalama wrote that plaintiff's appeal was partially |
| 14 | | granted because he was already on methadone for pain, but that there was |
| 15 | | no indication for physical therapy or a neurology consult because his facial |
| 16 | | paralysis was "a chronic and stable condition"; |
| 17 | • | Dr. Nangalama did not appeal the MARC's neurology consult denial |
| 18 | | because he agreed with the MARC's assessment that plaintiff's condition |
| 19 | | was not new, that it did not worsen or change, and it did not appear to |
| 20 | | affect plaintiff's daily life activities; |
| 21 | • | On March 10, 2011, plaintiff filed a second level 602 appeal because he |
| 22 | | was dissatisfied with Dr. Nangalama's response on February 28, 2011, and |
| 23 | | he later exhausted his appeal to the Third or Director's Level; |
| 24 | • | By August 2016, plaintiff's facial condition was "asymptomatic". |

(See Defendant's Separate Statement, Doc. 32-2).

/ / /

### C. Plaintiff's Evidence

Plaintiff did not file a separate statement of disputed facts. In his opposition to the defendant's motion for summary judgment, he makes vague arguments that the facts are in dispute, but very few are specifically identified as disputed facts. The one fact plaintiff continuously disputes is whether he told medical personnel that his facial injury was caused from a knife cut in the 1980s. He does not specifically argue the statement is false, but states that medical personnel were not authorized to put that in the medical records and that should not be a fact before the court in this case. However, the undersigned finds it irrelevant whether or not the injury occurred from a knife in the 1980s, and therefore will disregard it. As set forth below, it is undisputed that plaintiff has an injury to his face, and the injury occurred sometime prior to 2003.

Plaintiff provides his declaration, his deposition transcript, and excerpts from the pain management guidelines as support for his claims. Other than his declaration, the evidence submitted is essentially the same as the evidence submitted by the defendant. Plaintiff does not question the authenticity or content of the medical records, except in relation to when and how he received the facial scar. In his declaration and dispute of facts, plaintiff states the following:

- He has not been able to sleep, nor has he been able to consistently secure CDCR job assignments, exercise, or carry out daily activities;
- Other prisoners share pain medication with him;
- The February 23, 2011, examination of plaintiff by the defendant, should be enough evidence to establish the effect of the nerve pain which caused the plaintiff to be argumentative, uncooperative, and refuse the examination;
- Defendant was unprofessional;
- Plaintiff never reported to the defendant or his co-workers that he was cut with a knife in the late 1980s;
- While housed at Kern Valley State Prison, plaintiff informed his health

care provider that he was suffering from blackouts for which his provider referred him to a neurologist. Dr. Young's findings of "normal" related to blackouts not nerve damage.

(Plaintiff's objections, Doc. 37).

### D. Undisputed Facts

It is clear from the above, that there is no dispute as to a majority of the relevant facts. Plaintiff disputes only a few, mostly irrelevant, facts presented by the defendant. While several of the "facts" the defendant sets forth are more arguments than facts, the majority of the facts stated above are undisputed. However, plaintiff failed to contend or provide support for any dispute of the facts. Specifically, the following are undisputed facts:

- Plaintiff has a scar on the left side of his face, including a subtle droop or paralysis on the left side of his face as well as involuntarily twitching and may include nerve damage;
- This facial condition occurred sometime prior to 2003;
- In 2006, plaintiff was referred to a neurologist who conducted a series of electrode tests to rule out neurological problems such as seizures. Dr. Young found "Normal L facial twitch only. EEG normal awake & drowsy. Bardycardia. No Sleep, No seizure." (Nangalama Decl., Doc. 32-4, Ex. A at 8).
- Dr. Young's clinical impressions were: "Normal awake and drowsy EEG and recording. Recommend sleeping EEG. Consider cardio evaluation due to Bardycardia." (Nangalama Decl., Doc. 32-4, Ex. A at 9).
- Defendant Nangalama was one of plaintiff's primary care providers when he transferred to CSP-Sac;
- In April 2010, plaintiff was prescribed gabapentin for neuropathy;
- In November 2010, plaintiff was prescribed methadone, 5 mg to be taken

twice daily, for 90 days (Nangalama Dec., Doc. 32-4, Ex. A at 23);

- Dr. Nangalama noted plaintiff was being seen at that time for scoliosis, which is what the methadone was being prescribed for;
- This prescription was refilled for an additional 30 days in February 2011 (Nangalama Dec., Doc. 32-4, Ex. A at 38);
- Plaintiff signed the Opioid Use Agreement on January 5, 2011 (Nangalama Dec., Doc. 32-4, Ex. A at 29);
- On January 27, 2011, Dr. Nangalama referred plaintiff to the MARC in order to obtain a referral to a neurologist (Nangalama Dec., Doc. 32-4, Ex. A at 36);
- The MARC reviewed plaintiff's medical records and history, but denied Dr. Nagalama's request on February 3, 2011;
- Dr. Nangalama did not appeal the denial as he agreed with the decision;
- Dr. Nangalama examined plaintiff again on February 23, 2011, noted that plaintiff was requesting an increase in his methadone, determined no increase was necessary (Nangalama Dec., Doc. 32-4, Ex. A at 37);
- Plaintiff continued to receive naproxen as needed;
- Plaintiff was examined by Dr. Dhillon on May 19, 2011, for chronic care follow up. Dr. Dhillon found plaintiff had hypertension with blood pressure not to goal but asymptomatic, mild persistent asthma with good degree of control, mildly elevated TSH, and scoliosis for which he was given a lower bunk and extra mattress chrono. His medications included naprosyn. There was no mention of facial nerve pain (Nangalama Dec., Doc. 32-4, Ex. A at 43-44);
- In August 2016, plaintiff was examined at Folsom State Prison, for evaluation of a chronic condition of bell's palsy. It was noted he had very

subtle left facial droop more prominent when he was asked to grimace, but that the bell's palsy was mild and plaintiff was asymptomatic. He was not receiving any pain medication at that time (Nangalama Dec., Doc. 32-4, Ex. A at 4).

**E. Standard for Summary Judgment**

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

### III. DISCUSSION

Plaintiff alleges defendant violated his Eighth Amendment rights by discontinuing his methadone prescription, refusing to refer him to physical therapy and refusing him a neurology consult for surgery. Defendant contends that plaintiff claims are barred by the statute

of limitations, plaintiff cannot show the defendant was deliberately indifferent, and that the defendant is entitled to qualified immunity.

A. **Statute of Limitations**

Defendant's first argument is that plaintiff's claim are barred by the statute of limitations. Defendant argues that plaintiff, who is serving a life sentence with the possibility of parole, is not entitled to tolling and only had two years in which to file this action. Plaintiff filed this action more than two years after his claim accrued.

This issue was originally brought to the court on defendant's motion to dismiss. The court denied the motion, finding the claims were not barred by the statute of limitations. Nothing in the current motion alters that decision. Defendant argues plaintiff is not entitled to the addition tolling provided for in California Civil Procedure Code § 352.1(a) because he is a life prisoner.

California Civil Procedure Code § 352.1(a) provides tolling of the statute of limitations for two years when the plaintiff, "at the time the cause of action accrued, [is] imprisoned on a criminal charge, or in execution under sentence of a criminal court for a term of less than for life." As cited in the court's ruling on the prior motion to dismiss, the Ninth Circuit has held that section 352(a) applies to prisoners serving life sentences with the possibility of parole. See Martinez v. Gomez, 137 F.3d 1124 (9th Cir. 1998). Unless or until the California courts or the Ninth Circuit rules otherwise, this court is bound to follow that ruling. Thus, plaintiff, who is serving a term of life with the possibility of parole, can claim the benefit of section 352(a), and his claim is not time-barred.

B. **Deliberate Indifference**

Plaintiff claims the defendant was deliberately indifferent to his medical needs by discontinuing his prescription for methadone, refusing to send him to physical therapy and failing to secure him a neurology consultation. More specifically, plaintiff contends Dr. Nangalama denied him methadone for his nerve pain, failed to uphold his end of the written agreement to

11

send him to physical therapy, and failed to do enough to get him a neurology consultation.

Defendant counters that he was not deliberately indifferent to plaintiff's medical needs as there was no medically indicated reason for plaintiff to continue on methadone, the written agreement did not confer a right to physical therapy, and there was no medically indicated reason for a neurology consultation. As for the methadone, defendant offers that methadone is not indicated for neuropathic pain, was never prescribed to treat plaintiff's facial nerve pain, was ineffective to treat any nerve pain, and was only prescribed in an attempt to treat pain from plaintiff's scoliosis, back and knee pain. Indeed, defendant argues that plaintiff testified at his deposition that his facial twitching and pain actually got worse while taking the methadone. (Pl. Dep. Tr. p. 114:4-115:1). As the methadone was ineffective in treating plaintiff's scoliosis (the intended target), the amount was not increased as plaintiff requested, but rather plaintiff was weaned off the medication. Similarly, defendant contends the agreement the parties signed for plaintiff to be allowed to receive methadone did not confer any rights to plaintiff, but only imposed restrictions on his use. Thus, as there was no requirement that plaintiff be referred to physical therapy, surgery, or other specialty treatment, nor was any other treatment medically indicated, defendant contends he was not deliberately indifferent to plaintiff's medical needs.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious

such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

///

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Here, defendant offers evidence that plaintiff was prescribed methadone in response to his scoliosis pain not facial nerve pain, that his facial nerve paralysis and pain was a chronic stable condition, that plaintiff was on other pain medication, and that no additional pain medication or treatment was medically indicated. Plaintiff fails to offer any evidence to the contrary. He offers no evidence that the methadone was successful in treating his nerve pain, that other providers found the pain medication necessary or that any additional treatment was required. There is no indication that any doctor has found plaintiff's condition required physical therapy, surgery, methadone or other opiate pain medication, or a neurological consultation, and plaintiff has not provided any evidence thereof. While refusal to provide an inmate with necessary pain medication may rise to the level of an Eighth Amendment violation, plaintiff has failed to produce any evidence that such treatment was necessary. Defendant proffers his medical opinion and that of other providers, that the opiate pain medication was not necessary. Plaintiff has offered nothing to counter that evidence. In fact, plaintiff's medical records show that plaintiff has no need for pain medication, as he is no longer even receiving the naprosyn the defendant prescribed, nor has he continued to report any nerve pain to his current providers. Thus, plaintiff has failed to meet his burden in showing pain medication was necessary. At best, he has shown a difference in opinion between himself and his treating doctor. Plaintiff's citation to Blackstock v. Corrections Corp., 660 F.Supp.2d 764 (W.D. La. 2009) does not support his position. In that case, a case from Louisiana, the plaintiff produced evidence that a neurologist recommended a prescription of Neurontin, but the prison physician refused for no valid reason to follow the recommendation of the specialist. Here, no such evidence has been produced.

Instead, plaintiff's medical records indicate that other providers found no treatment or pain medication was necessary due to his condition being chronic and stable, and that his daily life activities were not adversely affected by his condition.

To the extent plaintiff argues the defendant violated his Eighth Amendment rights by failing to adequately advocate for a neurological consultation, he fails to sufficiently state a claim. Plaintiff does not actually argue that the defendant was deliberately indifferent for failing to secure a neurological consultation. Rather, he argues that the defendant failed to do enough, was incompetent, and unprofessional. This argument is essentially that the defendant was negligent or at best committed malpractice. There is little if anything plaintiff argues that would or could support a finding that the defendant acted with deliberate indifference. Indeed, the medical records provided by both plaintiff and the defendant support a finding that the defendant was not deliberately indifferent and continued to treat plaintiff's medical needs as he deemed adequate. Defendant even went so far as to request a neurological consult from the MARC, which was denied. Plaintiff argues the defendant failed to fill out the form correctly or advocate sufficiently for the consult, but it is clear from the medical records that the MARC had plaintiff's medical history on which the decision was based.

Similarly, plaintiff fails to provide any support for his contention that he should have been referred to physical therapy. It is unclear for what condition he claims he should have been sent to physical therapy for. Rather, plaintiff argues that by signing the opiate agreement, the defendant agreed to send plaintiff to physical therapy. However, a review of the agreement makes it clear that plaintiff was required to keep all of his appointments, including appointments with any specialist his provider may recommend, but there is nothing in the agreement requiring the defendant to refer plaintiff to physical therapy. It appears that plaintiff is simply reading more into the third paragraph of the agreement than is written.[2]

---

[2] Paragraph three of the agreement states: "Chronic pain is a difficult problem that requires a team approach. I must keep all the appointments (Physical Therapy, specialist

Thus, the undersigned finds the undisputed evidence shows that the defendant provided treatment to plaintiff in the form of pain medication for conditions that so required, referral to neurology that was denied by the MARC not defendant, and there was no medical reason show for a referral to physical therapy. Plaintiff's arguments to the contrary, as well as the evidence he provided, fail to contradict the defendant's evidence. The undersigned finds no deliberate indifference. At best the evidence and plaintiff's arguments show incompetence and/or malpractice. Neither of which is sufficient to find deliberate indifference in violation of the Eighth Amendment.

### C. Qualified Immunity

Finally, defendant argues that he should be entitled to qualified immunity in that the decisions he made were reasonable under the circumstances, the treatment plaintiff states was necessary was actually not clinically indicated and plaintiff's condition was chronic and stable. Plaintiff counters that the defendant is not entitled to qualified immunity because he failed to fill out the request for consultation form correctly.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the

---

clinicians, pain groups and counselors) that my pain management provider recommends for my treatment, or my opioid medication may be stopped."

official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have "reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first factors in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of

plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

The threshold inquiry is whether the facts alleged, when viewed in the light most favorable to the plaintiff, show that the defendant violated the plaintiff's constitutional rights. As discussed above, the undersigned finds that the undisputed evidence shows plaintiff's rights were not violated. However, the undersigned will assume for the moment, for the sake of this discussion, that plaintiff did show a constitutional violation, and that the Eighth Amendment right is clearly established in the context of the facts outlined by plaintiff. Turning, then, to the final step of the qualified immunity analysis, the undersigned finds that, viewing the facts in the light most favorable to plaintiff, a reasonable doctor in a similar circumstance would not likely have thought his/her conduct would have violated plaintiff's Eighth Amendment rights by denying plaintiff pain medication they determined was ineffective and refusing a specialist consultation for procedures not medically indicated for the prisoner's condition. Defendant Nangalama set forth in his declaration that he never prescribed methadone for plaintiff's facial nerve pain or paralysis, but rather for his scoliosis and other non-nerve pain. This contention is supported by plaintiff's medical records. As the defendant found the methadone was not effective in treating the scoliosis pain, the prescription was discontinued. No reasonable doctor would continue to prescribe a narcotic pain medication that was not effective in treating the pain targeted. As to the neurologist referral, the defendant did refer plaintiff to a neurologist, despite the earlier neurological consultation in 2006. The undisputed evidence shows that Dr. Nangalama did not refuse such consultation, but rather the MARC denied the request. To the extent plaintiff argues the defendant is not entitled to qualified immunity because he failed to fill out the form correctly, that argument is not convincing. The record shows the MARC had plaintiff's medical records and history, which is what the decision was based on. Similarly, as to the denial of a referral to physical therapy, there is no evidence set forth that any reasonable doctor in this situation would have granted plaintiff's request as there is no evidence that physical therapy was medically necessary for plaintiff's condition and the opioid agreement did not confer

such treatment as a right as plaintiff contends.

For these reasons, the undersigned concludes that Defendant is entitled to qualified immunity.

### D. **Plaintiff's Motion for Summary Judgment**

To the extent plaintiff moves for summary judgment on the basis that the defendant failed to uphold his part of the pain management agreement, the undersigned finds no evidence to support that claim, as set forth above. Defendant contends, and the undersigned agrees, that the agreement the parties signed placed restrictions on plaintiff, but did not confer any rights to any specific treatment. Therefore, plaintiff's argument that defendant failed to provide the treatment agreed to, i.e. physical therapy, is unsupported by the evidence. Plaintiff fails to meet his initial burden on summary judgment, and his motion should be denied.

### IV. CONCLUSION

The undersigned finds no genuine issue as to any material fact. The undisputed facts show defendant provided plaintiff treatment that was medically indicated, and clearly shows no deliberate indifference to plaintiff's medical needs. Thus, plaintiff fails to meet his burden to show any evidentiary support for his claims that the defendant was deliberately indifferent to his medical needs in violation of his Eighth Amendment rights. Alternatively, the undersigned finds the defendant meets the requirements for qualified immunity as it is not likely that a reasonable doctor in a similar circumstance would have thought his/her conduct would have violated plaintiff's Eighth Amendment rights.

Based on the foregoing, the undersigned recommends that:

1. Defendant's motion for summary judgment (Doc. 32) be granted;
2. Plaintiff's motion for summary judgment (Doc. 30) be denied;
3. Judgment be entered in favor of defendant; and
4. The Clerk of the Court be directed to enter judgment and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 13, 2017

    _____
    **CRAIG M. KELLISON**
    UNITED STATES MAGISTRATE JUDGE